IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SWOPE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 14-939 |
| | ) | Judge David Stewart Cercone/ |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| CITY OF PITTSBURGH; DETECTIVE | ) | |
| JOHN JOHNSON *in his individual and* | ) | |
| *Official capacity*; DETECTIVE LEONARD | ) | Re: ECF No. 7 |
| DUNCAN *in his individual and official* | ) | |
| *Capacity,* | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

Plaintiff Robert Swope, a pro se litigant, was the subject of what appears to have been a rather dramatic and frightening arrest for crimes that he did not commit. Justifiably upset, Mr. Swope has brought this civil rights action against Defendants Detective John Johnson ("Johnson"), Detective Leonard Duncan ("Duncan") and the City of Pittsburgh (collectively, "Defendants"), alleging that Defendants violated his rights provided by the Fourth and Eighth Amendment to the United States Constitution relative to his arrest and subsequent search of his residence.

Presently before the Court is a Motion to Dismiss ("the Motion") submitted on behalf of Defendants. ECF No. 7. Although the Court is sympathetic to Mr. Swope's complaints, for the following reasons, it is nevertheless respectfully recommended that the Motion be granted.

**II.     REPORT**

     **A.     FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, Mr. Swope was arrested at his home in the early morning hours on July 19, 2012, by a team of armed United States Marshals. Mr. Swope claims that the Marshals dragged him out of his house, handcuffed and shackled him without any explanation of why he was being arrested, and transported him to Police Headquarters on Allegheny Avenue. ECF No. 1, ¶¶ 7-10. Mr. Swope was then placed in an interrogation room and informed by unnamed detectives that he was being arrested for armed robbery. Mr. Swope alleges that, in order to force him to confess to various armed robberies in the Pittsburgh area, these detectives subjected him to a variety of interrogation tactics including being offered a "package deal" if he confessed and being threatened with consecutive charges of robbery so that "he would 'never get out' of jail." Mr. Swope also alleges that the detectives threatened to inform the judge that Mr. Swope was uncooperative so as to get an extra high bond set and to seize his rescue dogs and have them euthanized. Id. at ¶¶ 10-14. Despite Mr. Swope's protestations that he was a responsible business man in the area, a property owner, a licensed real estate agent, and that he could verify his whereabouts through receipts, phone records and e-mails, he was transported to the Allegheny County Jail where he remained for over twelve hours before being arraigned. Id. at ¶ 15.

Mr. Swope further alleges that when he was able to make a telephone call later that night he was informed by his fiancé that his house had been searched and that all of his money and personal belongings had been confiscated. Id. Mr. Swope alleges that on the morning of July 20, 2012, after his future father-in-law purchase a bail bond from Liberty Bail Bond for $2500, he was freed but was immediately escorted back to "holding" and charged with a second count of

armed robbery.[1]  Id. at ¶ 16.  Mr. Swope's fiancé's family posted a second bond at the cost of

$1250 that night.  The first bond, however, had to be reposted and Mr. Swope was not released

from the Allegheny County Jail until the morning of July 21, 2012.  Id. at ¶¶ 16-17.

Mr. Swope also claims that when he appeared for the preliminary hearing on July 26,

2012, he was informed by Defendant Johnson that a witness was on vacation and that the

preliminary hearing would be rescheduled for August 16, 2012.  Id. at ¶ 20.  Mr. Swope

apparently told Johnson at that time that he had irrefutable evidence proving that he was not in

the state at the time of the alleged robberies and, over the course of the next two weeks, Mr.

Swope met with his attorney and Defendants and provided that evidence.  Id. at ¶¶ 21-22.  Mr.

Swope complains that, this notwithstanding, he still had to wait until the August 16th preliminary

hearing for the charges to be withdrawn and that during those three weeks he was unable to

travel and/or conduct business as usual.  Id. at ¶ 23.

Mr. Swope claims that as a result of his arrest he lost $3250 in bond fees that he

reimbursed to his fiancé's family; $1000 in legal fees to retain a lawyer; $1100 in missing cash;

and actual and potential business as a licensed real estate agent.  Id. at ¶¶ 16, 18-19; pp. 12-13, ¶¶

2-8.  Mr. Swope also claims that he has suffered emotional damages, including embarrassment,

humiliation, nightmares and anxiety.  Id. at p. 13, ¶ 9.

Mr. Swope filed the instant Complaint on July 14, 2014, bringing claims pursuant to the

Fourth and Eighth Amendments to the United States Constitution for false arrest and false

imprisonment (Count I); unreasonable search and seizure (Count II); excessive bail (Count III);

malicious prosecution (Count IV); and municipal liability (Count V).  ECF No. 1.  Defendants

filed a Motion to Dismiss on August 6, 2014, to which Mr. Swope filed a Brief in Opposition on

---

[1] Although Mr. Swope has stated in the Complaint that he was initially released and rearrested on July 21, 2012, chronologically it appears that July 20, 2012, is the correct date.  See ECF No. 1, ¶ 6; ECF No. 1-3.

September 8, 2014. ECF Nos. 7, 13. Defendants filed a Reply Brief to Plaintiff's Opposition on

September 22, 2014, and on October 2, 2014, Mr. Swope filed a Supplemental Brief in

Opposition to Defendants' Motion. ECF Nos. 15, 16. As such the Motion is ripe for review.

### B.     STANDARD OF REVIEW

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to

resolve disputed facts or decide the merits of the case." Tracinda Corp. v. DaimlerChrysler AG,

197 F. Supp. 2d 42, 53 (D. Del. 2002), *citing* Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d

Cir.1993). In assessing the sufficiency of the complaint pursuant to a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in

the complaint and all reasonable factual inferences must be viewed in the light most favorable to

the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not

accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set

forth in the complaint. See California Publ. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d

126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to

raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265,

286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly

dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim

to relief that is plausible on its face," id. at 570, or where the factual content does not allow the

court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cnty. of Allegheny, 515 F.3d 224,

231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation

of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). The question is not whether the plaintiff will prevail in the end but, rather, is whether the plaintiff is entitled to offer evidence in support of his or her claims. See Oatway v. American International Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003).

### C.     DISCUSSION

Mr. Swope has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id. at 423. Here, as previously discussed, Mr. Swope alleges that Defendants deprived him of his rights provided by the Fourth and Eighth Amendments to the Constitution.

## 1. Claims for false arrest, false imprisonment and malicious prosecution[2]

Defendants argue that Mr. Swope's claims for false arrest, false imprisonment and malicious prosecution brought at Counts I and IV of the Compliant should be dismissed because there was, in fact, probable cause to arrest Mr. Swope for the crimes charged, thereby thwarting Mr. Swope's ability to succeed on any of these claims.

Indeed, a common element to claims for false arrest, false imprisonment and malicious prosecution is the absence of probable cause. See Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007); Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 651, 658 (W.D. Pa. 2010); Sershen v. Cholish, 2007 WL 3146357, at *9-10 (M.D. Pa. Oct. 26, 2007). Probable cause will be found where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." Commonwealth v. Thompson, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009). See Curcio v. Schwartz, 2013 WL 265801, at *3 (W.D. Pa. Jan. 22, 2013).

In this case, the record shows that, at the time of Mr. Swope's arrest, Defendants had information that Chad Stewart ("Stewart"), an employee of a Domino's Pizza shop at 511 Carson Street, Pittsburgh, Pennsylvania, had been robbed at gun point on March 25, 2012, and again on

---

[2] It is well settled that Section 1983 claims brought against a municipal employee in his or her official capacity is the equivalent of bringing an action against the government entity itself. Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000), citing Hafer v. Melo, 502 U.S. 21, 25 (1991). See Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988), citing Monell v. New York City Dep't of Soc. Services , 436 U.S. 658, 690 n.55 (1978) (official capacity suits are duplicative of the claims against the municipality and "generally represent only another way of pleading an action against an entity of which an officer is an agent . . ."). Thus, to the extent that Mr. Swope has sued the individual Defendants in their official capacities, those claims are duplicative of the claims brought against the City of Pittsburgh and are properly dismissed. As such, the following discussion pertains only to Mr. Swope's claims brought against Johnson and Duncan in their individual capacities.

March 30, 2012, by the same man.[3]  ECF Nos. 8-1; 8-2; 8-3.  Following the first robbery,

Stewart described the gunman as a white male, 5'8", a small/thin build at 140 pounds, in his

twenties, and wearing a black hoodie, a baseball cap and aviator sunglasses.  ECF No. 8-1.

Following the second robbery, Stewart described the gunman as a white male, between 5'5" and

5'6", with a small/thin build, wearing a cream colored hoodie, a baseball cap, a "brown chin

strap" beard, black sunglasses and carrying a black hand gun.  ECF No. 8-2.  Stewart's co-

worker, Raj Mummabavarabu, who witnessed the second robbery, also described the gunman as

5'5" to 5'7", a skinny build, wearing aviator sunglasses and a black baseball cap.  Mr.

Mummabavarabu, however, reported that the gunman was wearing a dark jacket.  ECF No. 8-4,

p. 2.  Although the gunman was also reported as wearing a white bandana or "do rag" on his face

during the second robbery, Stewart reported that he nevertheless immediately recognized the

robber as the same man who had robbed him on March 25, 2012, and that the gunman stated to

Stewart, "I'm going to do this to you again."  ECF No. 8-2; ECF No. 8-3, p. 1.

     On April 11, 2012, Defendants met with Stewart at his place of business to follow up on

the investigation.  ECF No. 8-5.  At that time, they learned from Stewart that several days after

Defendants had last spoken to Stewart, the same individual who robbed Stewart returned to the

pizza shop and asked Stewart and another co-worker, Noel, if they had a description of the

robber.  Believing that the individual would rob them again, Stewart and Noel said that they

"played along," and gave the individual the description that had been given to the police.  Id.

---

[3] The record in this case consists of documents that Mr. Swope has attached to the Complaint as well as documents
submitted by Defendants in conjunction with their Motion to Dismiss relative to the investigation and the charges
brought against Mr. Swope.  All of these documents are a matter of public record and/or are referenced in the
Complaint and integral to the claims raised therein.  Moreover, no party has challenged their authenticity.  As such,
the documents submitted by the parties are properly considered by the Court without converting the instant motion
to one for summary judgment.  See Ickes v. Flanagan, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008), quoting
Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994), and Steinhardt Group Inc.
v. Citicorp, 126 F.3d 144, 145 (3d. Cir 1997).

Stewart informed Defendants that when the individual then left the pizza shop, he was seen by Noel getting into a vehicle with Virginia license plate number XCE-7307. Stewart also reiterated that he was positive that it was the same male who had robbed him on both occasions. Id.

When Defendant Johnson ran the license plate number through "the index" it showed that the vehicle was registered to Robert Bannen Swope, III, of Fort Defiance, Virginia. Id. Using J-net Driver's License Information, Johnson located information on Robert Barren Swope, III, at an address in Pittsburgh. Id. Later that same day, Defendants met with Stewart and showed him a photo array using photos of white males with similar characteristics to Mr. Swope that had been obtained from the State J-net database. ECF No. 8-6. Because there was no current photograph on file with the State of Pennsylvania for Mr. Swope, a more current photo was obtained from the Virginia State Police Fusion Center. Id. After reviewing the photo array, Stewart pointed to the photograph of Mr. Swope stating, "This is the guy right here." When asked if he was certain, Stewart relied, "Yes, This is the same guy that came in a few days after and asked for a description of the robber. He's the same guy that robbed me twice." Id.

This evidence, which was known to Defendants at the time they sought and were issued a warrant for Mr. Swope's arrest, is clearly sufficient to warrant a man of reasonable caution in the belief that Mr. Swope had committed the crimes charged. See ECF Nos. 1-1; 1-4. While the manner of arrest and subsequent events were unfortunate and no doubt frustrating for Mr. Swope, it does not negate the fact that Defendants had probable cause for his arrest.

Mr. Swope does not dispute that this was the information known to Defendants when they sought a warrant for his arrest but nevertheless argues that Defendants acted with reckless disregard for the truth in seeking a warrant for Mr. Swope's arrest because Stewart's

identification "could not possibly have been accurate," given that the robber was wearing a baseball cap, a hood, sunglasses and a bandana on his face. Mr. Swope also argues that Defendants should have done more and were remiss in not investigating Stewart and by considering him a reliable witness because Stewart had been previously charged with similar crimes. Neither argument, however, compels a finding that Defendants lacked probable cause for Mr. Swope's arrest.

Initially, it should be noted that the robber was not wearing a bandana on his face during the first robbery and thus his nose, mouth and chin would have been visible. Indeed, even with the bandana on, Stewart was able to describe the robber as having a "chin strap" beard. Moreover, other factors such as height, weight, race characteristics, body language and voice are clearly relevant to making an identification. Indeed, notwithstanding the robber's attempt to conceal his face, Stewart unequivocally identified the man who came into the pizza shop asking about the description given to police as the individual who robbed Stewart on both occasions. In addition, the license plate of the vehicle driven by that individual led Defendants to Mr. Swope, who does not dispute that he has the same general physical characteristics as the robber described by both Stewart and Raj Mummabavarabu, including the "chin strap" beard. See ECF No. 1-1, p. 8.

Having apparently investigated Stewart on his own subsequent to these events, Mr. Swope discovered that Stewart has been charged with similar crimes in the past and argues that Defendants should have investigated Stewart's background before they sought a warrant for his (Mr. Swope's) arrest. There is nothing in the Complaint or in the record, however, to suggest that Defendants had reason to investigate Stewart -- who, after all, was the victim of these

robberies -- or suspect that he was being untruthful in his description of the robber, which was largely corroborated by Raj Mummabavarabu, or in identifying Mr. Swope as the robber.

In short, although in hindsight it is clear that Mr. Swope did not commit the crimes with which he was charged, his arguments are more in the nature of a defense to those crimes rather than a basis for finding that Defendants lacked probable cause in the first instance. See Walker v. Spiller, 54 F. Supp. 2d 421, 426 (E.D. Pa. 1999), *quoting* Romero v. Fay, 45 F.3d 1472, 1477–78 (10th Cir. 1995) ("[a] police officer's failure to investigate a suspect's alibi does not 'negate the probable cause for the warrantless arrest in the absence of a showing that the [officer's] initial probable cause determination was itself unreasonable'"). See also Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000)( "[i]n initially formulating probable cause, they need not 'investigate independently every claim of innocence'"); Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988) ("[a] policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause"). Indeed, contrary to Mr. Swope's contention, Defendants had no duty to continue to investigate before seeking an arrest warrant once they had probable cause to believe Mr. Swope had committed the robberies. See DiNicola v. DiPaolo, 25 F. Supp. 2d 630, 657–58 (W.D. Pa. 1998) (distinguishing cases cited by the plaintiff in that probable cause was not lacking on the record before the court and thus there was no duty on the part of police officers to investigate further); Forde v. Home Depot, 2011 WL 6372090, at *3 (E.D. Pa. Dec. 20, 2011), *citing* Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995) (for purposes of assessing whether officers had "probable cause" court focuses on the information that officers had available to them at the time of the alleged unlawful conduct, "not on whether the information resulted from exemplary

police work"); <u>Logsdon v. Hains</u>, 492 F.3d 334, 341 (6th Cir. 2007), *citing* <u>Ahlers v. Schebil</u>, 188 F.3d 365, 371 (6th Cir. 1999) ("after the officer determines, on the basis of the facts and circumstances known to him, that probable cause exists, the officer has no further duty to investigate or to search for exculpatory evidence"); <u>Brodnicki v. City of Omaha</u>, 75 F.3d 1261, 1264 (8th Cir. 1996) (an officer who has probable cause to arrest is not required to conduct further investigation for exculpatory evidence or to pursue the possibility that the suspected offender is innocent); <u>Simkunas v. Tardi</u>, 930 F.2d 1287, 1292 (7th Cir. 1991) ("[h]aving uncovered sufficient evidence to establish probable cause [the defendants] had no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence") (internal quotations and citation omitted).  <u>See</u> <u>also</u> <u>Vassallo v. Timoney</u>, 2001 WL 1243517, at *7 (E.D. Pa. Oct. 15, 2001), *aff'd*, 40 F. App'x 734 (3d Cir. 2002), *quoting* <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 36 (1979) ("[t]he validity of the arrest does not depend on whether the suspect actually committed the crime" and his "later acquitt[al] of the offense for which he is arrested is irrelevant to the validity of the arrest").  Because it is clear that Defendants had probable cause to seek a warrant for Mr. Swope's arrest, Mr. Swope's claims for false arrest, false imprisonment and malicious prosecution fail as a matter of law and are properly dismissed. <u>See</u> <u>Basile v. Twp. of Smith</u>, 752 F. Supp. 2d at 651, *citing* <u>Merkle v Upper Dublin Sch. Dist.</u>, 211 F.3d 782, 788 (3d Cir. 2000) ("[w]hether probable cause existed for an arrest is generally a question of fact for the jury . . . .[unless] the evidence, viewed in the light most favorable to the plaintiff, reasonably would not support a contrary finding, then the court may conclude that probable cause exists as a matter of law").[4]

---

[4] Alternatively, it would appear that Defendants are entitled to qualified immunity which shields government officials who "reasonably but mistakenly conclude that probable cause is present" from liability.  <u>Forde v. Home Depot</u>, 2011 WL 6372090, at *2, *quoting* <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (internal quotations and citation omitted).  <u>See</u> <u>Ray v. Twp. of Warren</u>, 626 F.3d 170, 173 (3d Cir. 2010), *quoting* <u>Malley v. Briggs</u>, 475

## 2. Claims for unreasonable search and seizure

At Count II of the Complaint, Mr. Swope brings claims against Defendants challenging the seizure of items found in his residence as unreasonable and outside the scope of items listed in the search warrant.  Importantly, amongst those items was $1100 in cash allegedly taken from Mr. Swope's wallet that did not appear on the inventory list of items seized during the search and was not returned to him.

The Fourth Amendment, which is made applicable to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV.  Generally, for a search to be reasonable, a government agent must secure a search warrant "issued upon probable cause and particularly describing the items to be seized."  Black v. City of Harrisburg, 2013 WL 6506756, at *4 (M.D. Pa. Dec. 12, 2013), *quoting* Brown v. Muhlenberg, Twp., 269 F.3d 205, 210 (3d Cir. 2001).  See id., *quoting* Messerschmidt v. Millander, ___ U.S.___, ___, 132 S. Ct. 1235, 1245 (2012) ("[a] search warrant must also be approved by a neutral magistrate, which is 'the clearest indication that the officers acted in an objectively reasonable manner'").

> An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search ... that such intrusions are not the random or arbitrary acts of government agents." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 621–22, 109 S.Ct. 1402, 1415–16, 103 L.Ed.2d 639 (1989). However, what is reasonable depends on all of the circumstances surrounding the search and the nature of the search itself. *United States v. Montoya de Hernandez*, 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985) (*citing New Jersey v. T.L.O.*, 469 U.S. 325, 337–42, 105 S.Ct. 733, 740–43, 83 L.Ed.2d 720 (1985)). The Fourth Amendment does not prohibit all government intrusions; it prohibits only

---

U.S. 335, 341 (1986) ("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'").  See also uWalker v. Spiller, 54 F. Supp. 2d 421, 425 (E.D. Pa. 1999), *citing* Hunter v. Bryant, 502 U.S. at 227 (the objective reasonableness of an arresting officer's belief that probable cause existed is a question for the court).

> those which are unjustified or made in an improper manner. *Schmerber v.*
> *California*, 384 U.S. 757, 768, 86 S.Ct. 1826, 1834–35, 16 L.Ed.2d 908
> (1966).

United States v. Ward, 131 F.3d 335, 340 (3d Cir. 1997).  See Bey v. Del Fava, 2008 WL

1844297, at *4 (D.N.J. Apr. 23, 2008), *citing* United States v. Ward, 131 F.3d at 340, and Los

Angeles County, California v. Rettele, 550 U.S. at 616 ("a search is reasonable, and thus not

violative of the Fourth Amendment, if it is supported by a valid search warrant").

     Here, Mr. Mr. Swope argues in his brief in Opposition to Defendants' Motion to Dismiss

that the search warrant was unconstitutionally obtained because there was not probable cause for

his arrest in the first instance (and thus no basis to conduct a search of his residence), and that the

search warrant was nevertheless invalid because it contained a "falsehood."  Neither of these

assertions, however, are contained in the Complaint and thus have no bearing on the disposition

of the instant Motion.  See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d

173, 181 (3d Cir. 1988) (plaintiff may not amend the Complaint through the brief filed in

opposition to a motion to dismiss).  Nevertheless, the Court has already found that probable

cause for Mr. Swope's arrest existed as a matter of law.  Accordingly, his allegedly

unconstitutional arrest cannot provide the basis for finding that the search warrant was

improperly sought.

     Furthermore, the allegedly false statement contained in the search warrant does not

provide the basis for finding a Fourth Amendment violation.  Specifically, Mr. Swope points to

the statement in the search warrant that the items to be searched for included clothing worn in the

robberies which were "clearly visible in surveillance videos," and argues that this statement is

false because Stewart stated on two separate occasions that the surveillance cameras were not

working.  See ECF No. 1-8, p. 1.  Review of the record, however, shows that Stewart merely said

that he didn't know if the cameras were working; that he did not know how to work them; and that one wire had been cut while a new camera system was being installed and that he would have to check with the owner to see if there was any footage of the incident. ECF Nos. 8-1, p. 2; 8-2, p. 2; 8-3, p. 2. Stewart therefore did not state that the cameras were not working and his statements do not provide the basis for finding that a falsehood was contained in the search warrant.

More importantly, however, it appears from a Supplemental Police Report that Defendants have submitted with their Reply Brief that images from the surveillance system at the pizza shop were recovered. ECF No. 15-1, p. 2. Thus, not only is the statement complained of in the search warrant not false but, given that the search warrant also states that the clothing being searched for was described by the victims, it is immaterial. ECF No. 1-8, p. 1. See United States v. Carmel, 548 F.3d 571, 575 (7th Cir. 2008) ("perfection is not required for an affidavit to pass constitutional muster. Rather, the affidavit only must be sufficient to allow a reasonably prudent person to believe that evidence of a crime will be found"); United States v. Noyes, 2010 WL 5139859, at *10 (W.D. Pa. Dec. 8, 2010) (finding that surplusage inadvertently included in the affidavit did not constitute a Fourth Amendment violation which does not require that an affidavit in support of a search warrant be free of all defects and flaws).

Further, as previously discussed, the search warrant application was executed by Detective Gray, not either of the Defendants, and any misstatement in the application cannot be attributed to them.

Indeed, with respect to Defendant Duncan, it is apparent that he neither applied for nor executed the search warrant in this matter. Rather, the record shows that a Detective Gray applied for the warrant and that Detectives Gray, Kirby and Defendant Johnson conducted the

14

search, seized the items at issue and filled out the inventory list.  See ECF No. 1-8; ECF No. 1-9.  Because Duncan cannot be held liable for conducting an unreasonable search and seizure that he did not participate in, Mr. Swope has not, and cannot, state a Fourth Amendment claim against him and Count II of the Complaint should be dismissed as against Duncan.

With respect to Defendant Johnson, the record shows that he participated in the search and was responsible for seizing four sweat shirts (one dark gray; one olive green; one light gray hooded and one dark blue hooded), and a "4 inch barrel" Model Single Action Army 45 Replica Revolver.  See ECF No. 8-7, p. 2.  Although the search warrant authorized the seizure of only light gray or cream colored hooded sweatshirts, Stewart described the first gunman as wearing a black hoodie and Raj Mummabavarabu described the second robber as wearing a dark jacket.  ECF No. 8-1, p. 2; ECF No. 8-4, p. 2.  The seizure of several sweatshirts other than the light gray or cream colored sweatshirts described in the warrant therefore does not appear to be unreasonable as that term is meant under the Fourth Amendment.  See United States v. Noyes, 2010 WL 5139859, at *10, *quoting* United States v. Ventresca, 380 U.S. 102, 108 (1965) (the sufficiency of a warrant must be judged in a "commonsense and realistic fashion"); United States v. Dougherty, 541 F. Supp. 2d 734, 738 (E.D. Pa. 2008), *quoting* United States v. $92,422.57, 307 F.3d 137, 149 (3d Cir. 2002) ("[t]he 'particularity' requirement is designed to prevent the issuance of 'general warrants' that authorize 'a general, exploratory rummaging in a person's belongings'").

Similarly, although Mr. Swope contests the seizure of his revolver, arguing that it bears no resemblance to the "black semi-automatic hand gun" used in the first robbery, the firearm used in the second robbery was described simply as a black hand gun, ECF No. 8-2, p. 2, and the search warrant allowed for the seizure of a "Black Handgun."  ECF No. 1-8, p. 1; 8-7, p. 2.

These circumstances, coupled with the absence of any facts to suggest that Johnson rummaged through Mr. Swope's belongings or conducted a general search of his residence, preclude a finding that the seizure of Mr. Swope's black handgun was either inappropriate or unreasonable.

Lastly, Mr. Swope alleges that $1100 was taken from his wallet during the search and unaccounted for on the inventory list. As troubling as the accusation is, Mr. Swope does not allege that Johnson took the money or was otherwise aware of and/or involved in its disappearance but rather seeks to hold Johnson liable for the alleged theft simply because the search was the result of Johnson having sought a warrant for his arrest without probable cause. See ECF No. 13, p. 12 ("Johnson ... can ... be held liable because [his] reckless behavior was a direct precursory action leading to plaintiff's missing money"). The Court has already found, however, that Johnson had probable cause for Mr. Swope's arrest and therefore the fact that Johnson initiated the process that led to the allegedly unlawful seizure is of no moment.

Furthermore, it appears that it is actually the City of Pittsburgh that Mr. Swope seeks to hold liable for the actions of his officers relative to the missing $1100. Id. ("[W]hen such criminal actions arise by officers operating under color of law, a municipality employing that individual can be held liable in a 1983 [action]"). Having found, however, that Mr. Swope has failed to state a Fourth Amendment claim against either Duncan or Johnson, it follows that he is unable to state a claim against the City of Pittsburgh.[5]

---

[5] Moreover, as discussed below, Mr. Swope has failed to allege any facts from which it could be inferred that the City of Pittsburgh had a custom or policy of acquiescing to theft of property seized while executing a search warrant. It should also be pointed out that Mr. Swope has state law remedies for the deprivation of the $1100 available to him. See Holmes v. Wasmer, 1989 WL 66347, at *2 (E.D. Pa. June 14, 1989) ("[e]ven presuming, for sake of argument, that the officers deliberately stole these items from plaintiff, the officers would not be liable under § 1983. Pennsylvania provides remedies for such property deprivations: a motion under Pa. R. Crim. P. 324 [renumbered as Rule 588], or an action for conversion against the officers involved"). See also Marsh v. Ladd, 2004 WL 2441088, at *7 (E.D. Pa. Oct. 27, 2004).

### 3. Claims for excessive bail

"To state an excessive bail claim under § 1983, Plaintiff must allege facts showing that his bail was excessive in violation of the Eighth Amendment." Moore v. Carteret Police Dep't, 2013 WL 5554411, at *8 (D.N.J. Sept. 20, 2013), *citing* McKnight v. Taylor, 2012 WL 5880331, at *7 (D.N.J. Nov. 20, 2012).

Although Mr. Swope alleges in the Complaint that he believes "that statements made by police detectives, combined with deliberately false information provided to the arraignment judge," ECF No. 1, ¶ 60, resulted in excessive bail, his beliefs are insufficient and he has not alleged any facts to support the conclusion that bail was, in fact, excessive for the crimes charged. In addition, Mr. Swope does not identify the police detectives who made the "statements," or what the nature of those statements were. Nor does he identify what "false information" was provided to the arraigning judge, or who provided it.[6] Indeed, Mr. Swope has not alleged any facts from which it could be inferred, absent pure speculation, that either Defendants Johnson or Duncan actually had any communication with or made any recommendation to the district justice who set the bail, the nature of any communications they may have had, or any facts to suggest that they had any influence whatsoever over the district justice's decision to set bail as he did. Moreover, it is not without significance that Defendants were not the officers who threatened Mr. Swope with seeking a high bail if he did not confess. To the extent that some unnamed officers may have sought a high bail, that conduct cannot be attributed to Defendants. In addition, as argued by Defendants, the district justice alone is charged with the responsibility of setting bail -- not Defendants or any other police officer. James v. York Cnty. Police Dep't, 160 F. App'x 126, 133 (3d Cir. 2005). As such, even if the

---

[6] To the extent that Mr. Swope alleges that the "false information" allegedly provided to the arraignment judge is the affidavit of probable cause for his arrest, the issue has already been addressed and found to be without merit.

bail set was excessive it cannot provide the basis for finding that Defendants violated Mr.

Swope's rights provided by the Eighth Amendment.  Id.  See Bradley v. Connor, 2014 WL

1404581, at *3 (D.N.J. Apr. 10, 2014) (dismissing the plaintiff's excessive bail claim for failure

to state a claim where the plaintiff failed to allege any facts to show that his bail was excessive or

that the defendants proximately caused his bail to be set too high).

### 4. Claim for municipal liability

Having found that Mr. Swope has failed to state a either a Fourth or Eighth Amendment

claim against either Defendant Johnson or Duncan, it necessarily follows that the City of

Pittsburgh cannot be held liable under for a constitutional violation that did not occur.  As such,

Mr. Swope's claims brought at Count V of the Complaint should be dismissed as well.

The Court notes, however, that Mr. Swope has nevertheless failed to allege facts from

which it could be inferred that Defendants were acting pursuant to a policy or custom so as to

impute liability to the City of Pittsburgh.

A municipality may not be held liable under § 1983 merely because its employees have

acted unconstitutionally.  Rather, a municipality may only be found liable for their own illegal

acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the

constitutional violation.  Commissioners of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997).

See Monell v. New York City Dep't of Soc. Services, 436 U.S. 658, 690-91 (1978).[7]  An act

performed pursuant to a "custom" is one that has not been formally approved by an appropriate

decisionmaker but may fairly subject a municipality to liability on the theory that the relevant

practice is so widespread as to have the force of law.  Commissioners of Bryan Cnty. v. Brown,

520 U.S. at 403-04 (citations omitted).  Liability based upon an unlawful custom will be found

"where relevant policy makers within the municipal unit had notice or knowledge of a risk of

---

[7] Mr. Swope appears to concede that there is no formal or written policy at issue here.  See ECF No. 13, p. 15.

deprivation of rights through a pattern of prior deprivations and acted with 'deliberate indifference' to the known risk." Bastile v. Elizabethtown Area Sch. Dist., 61 F. Supp. 2d 392, 405-06 (E.D. Pa. 1999), *citing* Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996). See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (it is incumbent upon a plaintiff to show that a policymaker is responsible for the custom through acquiescence). See also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003). "[D]eliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action; [a] showing of simple or even heightened negligence will not suffice." Commissioners of Bryan Cnty. v. Brown, 520 U.S. at 410. See Stanley v. City of Pittsburgh, 467 F. App'x 132, 133 (3d Cir. 2012); Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010).

Here, Mr. Swope has alleged in the Complaint only that the City of Pittsburgh has "exhibited a long standing, clearly indifferent pattern of behavior as to the actions of its police officers," which "has allowed officers such as defendants . . . to repeatedly violate laws;" that "top supervising agents in the City of Pittsburgh Bureau of Police failed to supervise and train its officers in the appropriate and effective manner;" which has created "an atmosphere in which officers of the law felt that they were above the law themselves." ECF No. 1, ¶¶ 77-79; 82. These general assertions, however, are simply conclusions and devoid of any facts from which it could be inferred that there has been a pattern of similar violations; that Defendants were acting pursuant to a custom; that any policymakers had knowledge of the risk of a deprivation of rights; or that they condoned or otherwise acquiesced to unconstitutional behavior.[8] Nor does Mr.

---

[8] In his Brief in Opposition to Defendants' Motion to Dismiss, Mr. Swope refers to reports of civil rights suits filed in the last three years presumably against the City of Pittsburgh and/or its police officers. These references, however, do not suffice to state a claim against the City of Pittsburgh in this case. ECF No. 13, p. 15. Not only are these assertions not included in the Complaint, which cannot be amended in a brief in opposition to a motion to

Swope identify in what manner the supervision and/or training of City police officers is deficient or how that deficiency caused his alleged deprivation.[9]  Under these circumstances, Mr. Swope has failed to state a claim against the City of Pittsburgh and the claims brought against it should be dismissed.

**D.      CONCLUSION**

Mr. Swope was clearly subjected to an unfortunate series of events.  And while the system is not perfect, contrary to Mr. Swope's view, it functioned as it should have in this case, particularly as it cannot be disputed that there was probable cause for Mr. Swope's arrest.  Once that determination was made, Defendants had no duty to conduct further investigation to test Mr. Swope's pleas of innocence.  Although, unfortunately, Mr. Swope was required to wait another three weeks to appear before a judge, the charges were nevertheless withdrawn at that time.  As frustrating as it may have been for Mr. Swope, it cannot be said that Defendants' conduct rose to the level of a constitutional violation.  As stated by the United States Supreme Court, ("[t]he Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty. Valid warrants will issue to search the innocent . . . unfortunately bear the cost. . . . When officers execute a valid warrant and act in a reasonable manner . . . , however, the Fourth Amendment is not violated."  Los Angeles Cnty., California v. Rettele, 550 U.S. 609, 615-16

---

dismiss, see Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d at 181, but even if they had been included in the Complaint, Mr. Swope has not provided any factual basis to permit the inference that these suits involved similar violations so as to place policymakers on notice of the alleged violations at issue here, or that the allegations raised in these suits were found to be meritorious.

[9] Although Mr. Swope makes reference in the Complaint to the recent criminal conviction of former Chief of Police Nathan Harper as evidencing a general failure to control his department which, in turn, created an atmosphere void of accountability, Mr. Swope has not, and cannot, shown a causal connection between the crimes that Mr. Harper was convicted of and the alleged constitutional violations alleged here relative to training and supervising police officers regarding arrests and executing search warrants.

(2007).  Thus, for the foregoing reasons, it is respectfully recommended that the Motion to Dismiss submitted on behalf of Defendants, ECF No. 7, be granted.[10]

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

RESPECTFULLY SUBMITTED,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


Dated: December 1, 2014

cc:     The Honorable David Stewart Cercone
        United States District Judge

        Robert Swope
        437 Arlington Avenue
        Pittsburgh, PA 15203

        All counsel of record by Notice of Electronic Filing

---

[10] Although the United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so, the Court is not required to allow an amended complaint to be filed where it would be inequitable or futile.  See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Here, given the above findings, particularly that relative to the existence of probable cause for Mr. Swope's arrest, it appears that Mr. Swope is unable to allege sufficient facts that would give rise to a civil rights violation.  Hence, allowing him to file another amended complaint would be futile and the Court should decline to do so.